Anoush Hakimi (SBN 228858)
anoush@handslawgroup.com
Peter Shahriari (SBN 237074)
peter@handslawgroup.com
Laura Steven (SBN 332168)
laura@handslawgroup.com
**THE LAW OFFICE OF HAKIMI & SHAHRIARI**
1800 Vine Street
Los Angeles, CA 90028
Telephone: (888) 635-2250
Facsimile: (213) 402-2170

Attorneys for Plaintiff,
**CHARLES TAYLOR**

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES TAYLOR, an individual,<br><br>        Plaintiff,<br><br>    v.<br><br>DJL 27 PROPERTIES, LLC, a California limited liability company; and DOES 1-10,<br><br>        Defendants. | Case No.<br><br>**COMPLAINT FOR VIOLATIONS OF: AMERICANS WITH DISABILITIES ACT OF 1990, 42 U.S.C. § 12181, *et seq.*; UNRUH CIVIL RIGHTS ACT, CALIFORNIA CIVIL CODE § 51, *et seq.*<br><br>DEMAND FOR JURY TRIAL** |

**Most Americans become disabled, at some point in life…**

Plaintiff Charles Taylor (hereinafter referred to as "Plaintiff") complains of

Defendants DJL 27 Properties, LLC, a California limited liability company; and

Does 1-10 (each, individually a "Defendant," and collectively "Defendants"), and

---

COMPLAINT

alleges as follows:

## I.    PARTIES

1.    Plaintiff Charles Taylor has difficulty walking caused by several musculoskeletal disorders. Plaintiff has scoliosis. Plaintiff also has deformed hips causing them to be asymmetrical. Plaintiff has flat feet. His spine and hip diseases cause him to have an abnormal gait and trouble walking. These conditions led to further complications such as 10 years of chronic infections in both big toes. He has limited range of movement. Plaintiff's condition also causes him to suffer from shortness of breath. He is a disabled person entitled to the protections of the California Unruh Civil Rights Act (UCRA) (see Cal. Civ. Code §§ 51, et seq., 52, et seq.), the Americans with Disabilities Act (ADA) (see 42 U.S.C. § 12102, et seq.), and other statutory laws which protect the rights of "disabled persons." Plaintiff has been issued a blue permanent Disabled Person Parking Placard, by the State of California.  Plaintiff is a California resident with physical disabilities.

2.    Defendant DJL 27 Properties, LLC, a California limited liability company, owned the property (the "Property"), located at 1433 E Rte 66 Glendora, CA 91740.

3.    There is a business establishment on the Property named "Pizza Hut" (hereinafter, "the business").

4.    The business is a public accommodation as defined by 42 U.S.C. §

12181(7).

5.    DOES 1 through 10 were at all relevant times lessors, lessees, property owners, subsidiaries, parent companies, affiliates, employers, employees, agents, corporate officers, managers, principles, and/or representatives of Defendants. Plaintiff is unaware of the true names and capacities of Defendants sued herein as DOES 1 through 10, inclusive, and, therefore, sues those Defendants by fictitious names.  Plaintiff requests that the Court grant leave to amend this complaint to allege the true names and capacities when determined by whatever source.

6.    Defendants, at all relevant times, were relevant to this action; were the owners, franchisees, franchisors, lessees, lessors, general partners, limited partners, agents, affiliates, employees, employers, representative partners, subsidiaries, partner companies, and/or joint venturers of the remaining Defendants; and were acting within the course and scope of that relationship.  Upon information and belief, Plaintiff alleges that each of the Defendants gave consent to, ratified, and/or authorized the acts alleged of each of the remaining Defendants.

7.    Plaintiff visited the public accommodations owned, leased, and/or operated by Defendants with the intent to purchase and/or use the goods, services, facilities, privileges, advantages, and/or accommodations offered by Defendants.

## II.    JURISDICTION & VENUE

8.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3) & (a)(4) for violations of the ADA.

9.     Pursuant to supplemental jurisdiction, an attendant and related cause of

action, arising from the same nucleus of operative facts, and arising out of the same

transactions, is also brought under the UCRA, which expressly incorporates the

ADA.

10.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because

the real property which is the subject of this action is located in this district, and

Plaintiff's cause of action arose in this district.

## III.   FACTS

11.    The Property is a facility which is open to the public and includes

business establishments.

12.    The Property has been newly constructed and/or underwent

remodeling, repairs, or alterations after January 26, 1992.  Defendants have failed

to comply with California access standards which applied at the time of each new

construction and/or alteration, and/or failed to maintain accessible features in

operable working condition.

13.    Plaintiff visited the Property during the relevant statutory period on twi

(2) separate occasions, in February 2021 and April 2021 to patronize the business

on the Property.

14.    Defendants did not offer persons with disabilities with equivalent

facilities, privileges, and advantages offered by Defendants to other patrons.

15.    Plaintiff encountered barriers, both physical and intangible, that interfered with, and denied, Plaintiff the ability to use and enjoy the goods, services, privileges, and/or accommodations offered at the Property.

16.    Parking is one of the facilities, privileges, and advantages offered by Defendants to patrons of the Property.

17.    However, there was no accessible parking for disabled patrons at the Property.  The parking spaces designated for disabled persons did not comply with the ADA.

18.    The parking area did not comply with the applicable California Building Code (CBC).

19.    When Plaintiff visited the Property, he experienced access barriers related to parking, signage, paths of travel, interior space, and restroom.

20.    Plaintiff encountered the following barriers, conditions, and/or violations at the Property:

**The parking and exterior which serves the Pizza Hut is confusing and inaccessible. The disabled parking signs are either located away from the space or hidden behind trees. The NO PARKING sign surface signage is missing. All this makes the double painted lines in the disabled accessible space even more confusing. The unloading access aisle leads into the**

**curd. Inside the access aisle there are gaps in the asphalt. There are cracks and fissures. The parking space is further cut into by other painted markings. The ramp from this area is very steep at its edges. There are other problems.**

**VIOLATION of 1991 ADAS § 4.6.4; 2010 ADAS § 502.6; 2010 CBC § 1129B.4; 2019 CBC § 11B-502.6.** (Sign missing – accessible parking space.) The sign identifying the designated disabled parking space is/was missing. Plaintiff needs to park in the space that is nearest to the building/business entrance and designated for disabled patrons. Plaintiff needs to be able to use an accessible parking space, with an access aisle, to safely access the Property. Clear signage will (better) deter others without disabilities from parking in the space; and will thus decrease the chances that he will be blocked from being able to use it.

**VIOLATION of 1991 ADAS § 4.6.4; 2010 ADAS § 502.6; 2010 CBC § 1129B.4; 2019 CBC § 11B-502.6.2.** (Sign missing – "Minimum Fine $250.") There was no sign warning of the minimum fine of $250 for unauthorized parking posted in front of the right designated disabled parking space. Plaintiff needs to park in the space that is closest to the business

entrance and designated for disabled persons.  Clear signage that distinctly warns of the penalties for unauthorized parking in the designated disabled parking space will deter others without disabilities from parking in the space and thereby blocking Plaintiff from being able to use it.

**VIOLATION of 1991 ADAS § 4.6.4; 2010 CBC § 1129B.4; 2019 CBC § 11B-502.6.3.**  (Sign improperly located.)  A designated disabled parking space identification sign shall be visible from each designated disabled parking space.  Signs shall be permanently posted either immediately adjacent to the parking space, or within the projected parking space width at the head end of the parking space.  Here it was not. This makes it difficult for Plaintiff and other patrons to identify or locate the designated disabled parking space.  Plaintiff needs to park in the space that is nearest to the business entrance and designated for disabled patrons.  Plaintiff needs to be able to use an accessible parking space, with an access aisle, to safely access the Property.  A properly placed designated disabled parking space identification sign will (better) deter others without disabilities from parking in the space; and will thus decrease the chances that Plaintiff will be blocked from being able to use it.

COMPLAINT

**VIOLATION of 2019 CBC § 11B-502.6; 2010 ADAS § 502.6.** (Sign obscured.)  The sign identifying designated disabled parking space(s) is illegible because it is covered with leaves and branches from a nearby tree. This makes it difficult for Plaintiff and other patrons to see and read the sign. Plaintiff needs to be able to use an accessible parking space, with an access aisle, to safely access the Property. Clear signage that explicitly marks the designated disabled parking space will deter others without disabilities from parking in the space and thereby blocking Plaintiff from being able to use it. Plaintiff needs to park in the space that is nearest to the business entrance and designated for disabled patrons.

**VIOLATION of 1991 ADAS § 4.3.2(1); 2010 ADAS § 206.2.1; 2010 CBC § 1114B.1.2; 2019 CBC § 11B-206.2.1.** (Exterior route of travel.)  An accessible route of travel is not provided to all entrances and portions of the building, to all entrances of the Property, and/or between the building and a public way.  Plaintiff needs a dedicated path of travel, free of obstructions and vehicles, where (on which) Plaintiff can travel.  It is dangerous for Plaintiff to navigate without a safe, protected, accessible route of travel; thus, the violation interferes with Plaintiff's ability to fully access the premises.

**VIOLATION of 1991 ADAS § 4.3.7; 2010 ADAS § 403.3; 2019 CBC § 11B-403.3.**  (Route/path of travel – cross slopes.)  The cross slopes of the route/path of travel are greater than two percent (2%).  It is difficult for Plaintiff to travel on surfaces with excess slopes.  Plaintiff is at risk of falling when there are surfaces with excess slopes.  The presence of excess slopes denied Plaintiff full and equal use or access during Plaintiff's visits by making it difficult and/or uncomfortable for Plaintiff to traverse the property/route.  The barrier also deterred/deters Plaintiff from visiting the Property because it would make it difficult and/or uncomfortable for Plaintiff to walk/traverse the property/route.

**VIOLATION of 1991 ADAS §§ 4.5.2, 4.6.8; 2010 ADAS §§ 302.1, 303.1, 303.2, 303.3, 303.4; 2010 CBC §§ 1120B.2, 1133 B.7.1, 1133B.7.4; 2019 CBC §§ 11B-303.1, 11B-303.2, 11B-303.3, 11B-303.4, 11B-303.5**.  (Abrupt changes in level; uneven ground surface.)  Floor and ground surfaces shall be stable, firm, and slip resistant.  Changes in level of 1/4 inch high maximum shall be permitted to be vertical and without edge treatment.  Changes in level between ¼-inch high minimum and ½-inch high maximum shall be beveled with a slope not steeper than 1:2. Changes in level greater than 1/2 inch high shall be ramped.  The route of travel, including from the designated

disabled parking space to the entrance of the building/business, have an uneven ground surface with changes in level exceeding one-half inch (1/2") (and no ramps are provided).  The route of travel has damaged ground which is not flush or flat.  The ground has pavement distresses.  The types of pavement distresses which exist include but are not limited to alligator (fatigue) cracking.  These pavement distresses are made worse and exacerbated by design elements which do not follow the ADAAG.  These areas should be fixed immediately because they pose a tripping and/or falling hazard.  Plaintiff, a cannot safely and fully enjoy the premises when such conditions are present.  These excess changes in level and uneven ground surfaces pose risks to Plaintiff, including that Plaintiff's foot, may catch on the uneven ground causing Plaintiff to fall.  These abrupt changes in level pose an increased risk of danger to Plaintiff, as Plaintiff is more likely to trip/fall than someone without disabilities.  The excess changes in level (i.e., uneven ground) denied Plaintiff full and equal use or access during each of Plaintiff's visits by making it difficult/harder and more dangerous for Plaintiff to traverse the property/route.  The excess changes in level (i.e., uneven ground) also deterred/deters Plaintiff from visiting the Property because it would be difficult/harder and more dangerous for Plaintiff to traverse the property/route.

**VIOLATION of 1991 ADAS § 4.6.2; 2010 ADAS § 208.3.1; 2010 CBC § 1129B.1.** (Minimize travel distance.) The parking space reserved for disabled persons is not located to minimize the travel distance to the entrance. The parking spaces closest to the entrance of the business are not designated accessible spaces. The space reserved for disabled persons are located farther.

**VIOLATION of 1991 ADAS § 4.6.3; 2010 ADAS § 502.2.; 2010 CBC §§ 1129B.3, 1129B.4; 2019 CBC §§ 11B-502.2, 11B-502.6.4.1, 502.6.4.2.** (Faded paint – accessible parking space lines.) The paint used for the designated disabled parking space is so worn and aged that it cannot (can hardly) be seen. This makes it unclear where the actual designated disabled parking space is, and it makes it difficult for Plaintiff to use the space. Plaintiff needs to be able to use the designated disabled parking space, which should be located closest to the entrance and linked to an accessible route of travel, because it is more difficult for Plaintiff as opposed to non-disabled persons, to maneuver about the Property. When the paint for the designated disabled parking space is worn and aged, there is a greater risk that non-disabled patrons will park in the designated disabled parking space, preventing Plaintiff from using it and accessing the business.

COMPLAINT

**VIOLATION of 2010 ADAS § 502.2; 2010 CBC § 1129B.3; 2019 CBC § 11B-502.2.** (Width of designated disabled parking space.) The designated disabled parking space measured/measures less than nine feet (9') wide, which made (would make) it difficult for Plaintiff to use the designated space, and which denied (would deny) plaintiff full and equal use and access of the full width of the required space. The paint used for the accessible parking space lines are so faded and worn that it is difficult to identify the actual dimensions of the space. Plaintiff cannot safely disembark from the vehicle when adequate space is not provided. Plaintiff needs to be able to use the designated disabled parking space, which should be located closest to the entrance and linked to an accessible route of travel, because it is more difficult for Plaintiff, as opposed to non-disabled persons to maneuver about the Property.

**VIOLATION of 1991 ADAS § 4.6.3; 2010 ADAS § 502.3.1; 2010 CBC § 1129B.3; 2019 CBC 11B-502.3.1.** (Width of adjacent access aisle.) The loading/unloading access aisle adjacent to the designated disabled parking space is/was less than five feet (5') wide, which denied (would deny) plaintiff full and equal use and access of the full width of the required access aisle. Plaintiff needs extra space to be able to safely exit the vehicle. When the

access aisle is too small, Plaintiff has difficulty disembarking from the vehicle, which poses a greater risk of injury to Plaintiff and can also cause humiliation and/or frustration.

**VIOLATION of 2010 CBC § 1129B.4; 2019 CBC § 11B-502.6.4.**

(Parking space ground surface signage/International Symbol.)  The paint used for the designated disabled parking space is faded and cannot (can hardly) be seen; thus, there is no compliant surface signage at the designated disabled parking space.  The International Symbol of Accessibility is so faded and worn that it can hardly be seen.  This makes it difficult for Plaintiff and other patrons to identify or locate the designated disabled parking space.  When the paint for the International Symbol of Accessibility is so faded and worn, there is a greater risk that non-disabled patrons will park in the designated disabled parking space, preventing Plaintiff from using it and accessing the business.  Plaintiff needs to be able to park in the space that is nearest to the entrance and designated for disabled patrons.  Plaintiff needs to be able to use an accessible parking space, with an access aisle, to safely access the Property.  Clear surface signage that explicitly marks the designated disabled parking space will deter others without

13

COMPLAINT

disabilities from parking in the space, so that the space can be available for Plaintiff's use.

**VIOLATION of 2010 ADAS § 502.3.3; 2010 CBC § 1129B.3.1; 2019 CBC § 11B-502.3.3.**  (<u>"NO PARKING" – ground surface signage.</u>)  The words "NO PARKING," which are required to be painted in the loading/unloading access aisle, were/are missing (and/or were completely faded such that the words were no longer visible).  As a result, non-disabled patrons parked in the loading/unloading access aisle, blocking Plaintiff from being able to use the access aisle.  Plaintiff needs extra space to be able to safely exit the vehicle. Plaintiff has difficulty disembarking the vehicle, which poses a greater risk of injury to Plaintiff and can cause humiliation and/or frustration.  Plaintiff cannot access the Property safely if Plaintiff cannot use an accessible parking space and adjacent access aisle.

**VIOLATION of 1991 ADAS § 4.6.3; 2010 ADAS § 502.3; 2010 CBC § 1129B.3; 2019 CBC § 11B-502.3.**  (<u>Access aisle adjoining accessible route.</u>)  The adjacent loading/unloading access aisles must adjoin an accessible route to an accessible entrance.  It does/did not.  Plaintiff cannot access the

Property safely unless there is an access aisle onto which Plaintiff can disembark from the vehicle. The access aisle must lead to an accessible route, so that Plaintiff can safely travel to and enter the business.  There is no safe route of travel from the designated disabled parking space to the business entrance.  The barrier deterred/deters Plaintiff from visiting the property because the lack of a safe and accessible route would make it difficult, uncomfortable, and/or unsafe for Plaintiff to walk around the property, including to travel from the designated disabled parking space to the building entrance.

**VIOLATION of 1991 ADAS §§ 4.3.8, 4.5.2; 2010 ADAS §§ 302.1, 303.2, 303.3, 303.4, 403.2; 2010 CBC §§ 1133B.7.1, 1133B.7.4; 2019 CBC §§ 11B-302.1, 11B-303.2, 11B-303.3, 11B-303.4, 11B-403.2.**  (Changes in level – designated disabled parking space.)  There are excess changes in level (of more than one-half inch) within the parking spaces reserved for disabled patrons.  The asphalt is uneven, and has depressions, dips, and divots.  The ground has sunken and cracked parts.  This makes travelling in this area difficult.  These excess changes in level and uneven ground surfaces pose risks to Plaintiff, including that Plaintiff may fall.

**VIOLATION of 1991 ADAS §§ 4.3.7, 4.8.1; 4.8.4(2), 4.8.4(3); 2010 ADAS § 403.3; 2010 CBC §§ 1133B.5.4.2, 1133B.5.4.6; 2019 CBC § 11B-403.3.**

(Excess slopes; no compliant ramp.)  The route(s) of travel has/have slopes greater than 1:20 (5%), but there is no compliant ramp (with appropriate level ramp landings at the top and bottom of each ramp).  It is difficult for Plaintiff to walk on sloped surfaces that do not provide the safety features of a compliant ramp.  These excess changes in level pose risks to Plaintiff, including that Plaintiff may fall. The lack of a complaint ramp, with its attendant safety/accessibility features, denied Plaintiff full and equal use or access during his visits by making it difficult/harder for Plaintiff to traverse the property/route.

**VIOLATION of 2010 CBC § 1133B.5.2; 2019 CBC § 11B-405.5.**

(Minimum width of ramps.)  The route of travel has slopes greater than 1:20 (5%), but there is no compliant ramp.  There is no compliant ramp with a minimum width of forty-eight inches (48").  Plaintiff requires adequate space to navigate on sloped surfaces and/or ramps and Plaintiff cannot do so without a ramp of sufficient width.  The lack of a complaint ramp, of the requisite width, denied Plaintiff full and equal use or access during Plaintiff's visits by making it difficult/ harder for Plaintiff to traverse the property/route.

COMPLAINT

The lack of a complaint ramp, of the requisite width, also deterred/deters Plaintiff from visiting the Property because it would be difficult/harder for Plaintiff to traverse the property/route.

**VIOLATION of 1991 ADAS § 4.8.2; 2010 CBC § 1133B.5.3.** (Least possible slope of ramp.)  There is no compliant ramp, with the least possible slope, leading into the business.  The curb ramp exceeds the maximum running slope allowable.  Plaintiff has difficulty traveling on slopes that are not compliant ramps.

**VIOLATION of 1991 ADAS § 4.8.2; 2019 CBC § 11B-405.2.**  (Maximum slope of ramp.)  Ramp runs shall have a running slope not steeper than 8.33% (1:12).  The slope of the area leading into the business is/was greater than 8.33%.  This exceeds the maximum running slope allowable.  It is difficult and dangerous for Plaintiff to walk on excess slopes, and/or sloped surfaces that do not provide the safety features of a compliant ramp.  The presence of excessively steep running slopes (and the absence of a compliant ramp) denied/denies Plaintiff full and equal use or access by making it difficult/harder for Plaintiff to walk/traverse the property/route.

17

COMPLAINT

**VIOLATION of 2010 ADAS § 403.3; 2019 CBC § 11B-403.3.**  (Route of travel/ramp – cross slope.)  The cross slope of the route of travel/ramp is greater than two percent (2%).  It is difficult for Plaintiff to walk/traverse on surfaces with excess slopes.  These excess slopes pose risks to Plaintiff, including that Plaintiff may fall.  Plaintiff has difficulty walking on excess slopes. Plaintiff is at risk of falling when there are surfaces with excess slopes.  The presence of excess slopes denied Plaintiff full and equal use or access during his visits by making it difficult and/or uncomfortable to walk/traverse the property/route. The barrier also deterred/deters Plaintiff from visiting the Property because it would make it difficult and/or uncomfortable for Plaintiff to walk/traverse the property/route.

**VIOLATION of 2010 CBC § 1133B.5.4.9.**  (Ramp curb.)  Required ramps shall have a curb at least two (2) inches high, or a wheel guide rail two (2) to four (4) inches high on each side of the ramp landing that has a vertical drop exceeding four (4) inches and that is not bounded by a wall or fence.  The ramp does not have a curb at least two (2) inches high, or an appropriate wheel guide rail.  The lack of a complaint ramp, with its attendant safety/accessibility features, denied Plaintiff full and equal use or access during his visits by making it difficult/harder for Plaintiff to traverse the

property/route.  The lack of a complaint ramp, with its attendant safety/accessibility features, also deterred/deters Plaintiff from visiting the Property because it would be difficult/harder for Plaintiff to traverse the property/route.

21.    Plaintiff personally encountered the foregoing barriers, conditions, and/or violations.

22.    These barriers, conditions, and/or violations denied Plaintiff full and equal access, and caused him difficulty, humiliation, and/or frustration.

23.    The barriers, conditions, and/or violations existed during each of Plaintiff's visits in 2021.

24.    Defendants knew that the foregoing architectural barriers prevented access.  Plaintiff will prove that Defendants had actual knowledge that the architectural barriers prevented access, and that the noncompliance with the ADA Standards for Accessible Design (ADAS), ADA Accessibility Guidelines for Buildings and Facilities (ADAAG), and/or the California Building Code (CBC) was intentional.

25.    Plaintiff intends and plans to visit the Property again soon.  Currently, Plaintiff is reasonably deterred from returning to Defendants' public accommodation facilities because of the knowledge of barriers to equal access,

relating to Plaintiff's disabilities, that continue to exist at the Property.

26.    Defendants have failed to maintain in working and useable condition those features necessary to provide ready access to persons with disabilities.

27.    Defendants have the financial resources (i.e., financial ability) to remove these barriers without much expense or difficulty in order to make the Property more accessible to their mobility impaired customers (i.e., disabled persons).  The removal of these barriers is readily achievable.  The United States Department of Justice has determined that removal of these types of barriers is readily achievable.

28.    Defendants refuse to remove these barriers.

29.    On information and belief, Plaintiff alleges that Defendants' failure to remove these barriers was/is intentional, because the barriers are logical and obvious.  During all relevant times, Defendants had authority, control, and dominion over these conditions.  Thus, the absence of accessible facilities was/is not a mishap; it was/is the result of intentional actions or inaction.

30.    These barriers to access are described herein without prejudice to Plaintiff citing additional barriers to access after further inspection by Plaintiff's agents and/or experts.  *See Doran v 7-ELEVEN, Inc.,* 524 F.3d 1034 (9th Cir. 2008) (holding that once a plaintiff encounters one barrier at a site, a plaintiff can sue to have all barriers that relate to his or her disability removed, regardless of whether

he or she personally encountered them).

## IV. FIRST CAUSE OF ACTION:  VIOLATION OF THE

## AMERICANS WITH DISABILITIES ACT OF 1990

## (42 U.S.C. § 12101, *et seq.*)

(Against All Defendants)

31.    Plaintiff alleges and incorporates by reference each and every

allegation contained in all prior paragraphs of this complaint.

32.    Title III of the ADA prohibits discrimination against any person on the

basis of disability in the full and equal enjoyment of the goods, services, facilities,

privileges, advantages, or accommodations of any place of public accommodation

by any person who owns, leases, or operates a place of public accommodation.  42

U.S.C. § 12182(a).

33.    Defendants discriminated against Plaintiff by denying him "full and

equal enjoyment" and use of the goods, services, facilities, privileges, and/or

accommodations they offered during each visit, and each incident of a deterred

visit.

34.    The acts and omissions of Defendants herein were/are in violation of

Plaintiff's rights under the ADA and the regulations codified at 28 C.F.R. Part 36,

*et seq*.

35.    Pursuant to the ADA, discrimination is a "failure to make reasonable

COMPLAINT

modifications in policies, practices or procedures, when such modifications are necessary to afford goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations."  42 U.S.C. § 12182(b)(2)(A)(ii).

36.    The ADA requires removal of architectural barriers in existing facilities where such removal is readily achievable.  42 U.S.C. § 12182(b)(2)(A)(iv) ("discrimination includes … a failure to remove architectural barriers, and communication barriers that are structural in nature, in existing facilities, … where such removal is readily achievable").  The term "readily achievable" is defined as "easily accomplishable and able to be carried out without much difficulty or expense."  42 U.S.C. § 12181(9).  Barriers are defined by reference to the ADA Standards for Accessible Design (ADAS), found at 28 C.F.R. Part 36, including the ADA Accessibility Guidelines for Buildings and Facilities (ADAAG), at Part 36, Appendix A.

37.    If removal of any barrier is not readily achievable, a failure to make goods, services, facilities, or accommodations available through alternative methods is also prohibited if the alternative methods are readily achievable.  42 U.S.C. § 12182(b)(2)(A)(v).

38.    Defendants can remove the architectural barriers at their facility without much difficulty or expense.  Defendants violated the ADA by failing to remove the barriers because removal was readily achievable.  For instance, there are companies which can repaint parking areas for as little as $350.  Defendants can afford such costs, which are a fraction of what Defendants receive in (rental or business) profits in connection with such a large and expensive property.

39.    Alternatively, if it was not "readily achievable" for Defendants to remove barriers at their facilities, Defendants violated the ADA by failing to make their services available through alternative methods which are readily achievable.

40.    On information and belief, Plaintiff alleges that the facility was altered after January 26, 1992, mandating compliance with accessibility requirements under the ADA.

41.    The ADA requires that facilities altered in a manner that affects or could affect their usability must be made readily accessible to individuals with disabilities to the maximum extent feasible.  42 U.S.C. § 12183(a)(2).

42.    Defendants altered the facilities at the Property in a manner that violated the ADA, and/or failed to make the Property readily accessible to physically disabled persons to the maximum extent feasible.

43.    The ADA also requires reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford goods, services,

facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations.  42 U.S.C. § 12182(b)(2)(A)(ii).

44.     Defendants violated the ADA by failing to make reasonable modifications in policies, practices, or procedures at the Property when these modifications were necessary to afford (and would not fundamentally alter the nature of) the goods, services, facilities, privileges, advantages, or accommodations.

45.     Plaintiff seeks a finding from this Court that Defendants violated the ADA, so that he may pursue damages under California's Unruh Civil Rights Act.

46.     Here Defendants' failure to make sure that accessible facilities were available to, and ready to be used by, Plaintiff was/is a violation of law.

47.     Plaintiff would like to continue to frequent the Property, which is close to his home.  However, he is deterred from doing so because he has been discriminated against and is aware of accessibility barriers at the Property.

48.     Among the remedies sought, Plaintiff seeks an injunction order requiring compliance with federal and state disability access laws, and remediation of the existing access violations (i.e., removal of the existing barriers) at the Property.

**V. SECOND CAUSE OF ACTION:  VIOLATION OF THE**

# UNRUH CIVIL RIGHTS ACT

## (Cal. Civ. Code §§ 51-53)

(Against All Defendants)

49.    Plaintiff repleads and incorporates by reference, as though fully set forth herein, the allegations contained in all prior paragraphs of this complaint.

50.    California Civil Code § 51 states, in part:  "All persons within the jurisdictions of this state are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever."

51.    California Civil Code § 51 also states, in part:  "No business establishment of any kind whatsoever shall discriminate against any person in this state because of the disability of the person."

52.    California Civil Code § 51(f) specifically incorporates, by reference, an individual's rights under the ADA into the Unruh Civil Rights Act (UCRA).

53.    The UCRA also provides that a violation of the ADA, or California state accessibility regulations, is a violation of the UCRA.  Cal. Civ. Code § 51(f); *see Arnold v. United Artists Theatre Circuit, Inc.*, 866 F. Supp. 433, 439 (N.D. Cal. 1994).

54.    Defendants' above-mentioned acts and omissions have violated the UCRA by denying Plaintiff his rights to full and equal use of the accommodations,

advantages, facilities, privileges, and services they offer, on the basis of Plaintiff's disability.

55.    Defendants' above-mentioned acts and omissions have also violated the UCRA by denying Plaintiff his rights to equal access pursuant to the ADA; and, thus, Defendants are liable for damages.  *See* Cal. Civ. Code § 51(f), 52(a).

56.    Because Defendants' violation of the UCRA resulted in difficulty, discomfort, and/or embarrassment for Plaintiff, Defendants are each also responsible for statutory damages.  *See* Cal. Civ. Code § 55.56(a), (c).

//

//

//

//

//

//

//

//

//

//

//

//

26

COMPLAINT

57.   Plaintiff was (actually) damaged by Defendants' wrongful conduct. He seeks actual damages, and statutory minimum damages of four thousand dollars ($4,000) for each offense (i.e., for each occasion that Plaintiff was denied full and equal access).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants, as follows:

1.  For injunctive relief compelling Defendants to comply with the Americans with Disabilities Act and the Unruh Civil Rights Act.  Note: Plaintiff is not invoking section 55 of the California Civil Code and is not seeking injunctive relief under the Disabled Persons Act.

2.  Damages under the Unruh Civil Rights Act, which provides for actual damages and statutory minimum damages of $4,000 per each offense.

3.  Reasonable attorney fees, litigation expenses, and costs of suit, pursuant to 42 U.S.C. § 12205, and Cal. Civ. Code § 52.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.


Dated: June 19, 2021              THE LAW OFFICE OF HAKIMI & SHAHRIARI

                                  By:    /s/ Peter Shahriari
                                         PETER SHAHRIARI, ESQ.
                                         Attorney for Plaintiff Charles Taylor

COMPLAINT